No. 13,413.

## J. B. CAMORS & COMPANY VS. THE UNION MARINE INSURANCE COMPANY, LIMITED.

### SYLLABUS.

1. A warrant in an open marine policy stipulated that all risks should be reported to insurer as soon as known to assured. It was the custom for assured to promptly notify insurer of the arrival of a cargo, and settlement would be made at the end of each month. *Held* that a failure to report risks known to assured breached the policy as an entirety at the option of insurer, and not merely as to the risks not reported.
2. Acceptance, after arrival of cargo, of premiums or risks not properly reported was not a waiver of the warranty so as to estop insurer to take advantage of his right to deny his liability on a loss because of previous failure to report risks promptly.
3. That an epidemic prevailed and assured failed to make prompt reports of risks on account of the sickness of his clerks, did not prevent the breach of the warranty vacating the policy.
4. That insurer retained notice of other risks after a loss does not estop it to insist on the breach, it not having received the premiums on them, or done any affirmative act in respect to them.

APPEAL from the Civil District Court, Parish of Orleans— *Theard, J.*

*Charles J. Theard* and *Solomon Wolff* for Plaintiffs, Appellants.

*Parkerson & Tobin* for Defendant, Appellee.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiffs asked judgment against the defendant company upon an open marine policy of insurance for the sum of three thousand nine hundred and twenty-two dollars and seventy-seven cents, with legal interest from 14th of July, 1898, until paid, for the loss of a cargo of bananas.

They alleged that on the 29th of October, 1896, the defendant entered into a written contract of insurance with them, bearing the, its corporation, Number 423. That under said contract and otherwise the defendant bound itself to them, among other things:

To insure and reimburse petitioners against any loss which they

might sustain by the desruction of any cargo of bananas and other goods and merchandise mentioned in said policy or contract of insurance from any of the causes mentioned therein.

It is stipulated in said contract or policy of insurance, which was of the kind commonly known and described as an open policy, that all cargoes of bananas coming to petitioners from Bocas del Toro were insured by the defendant corporation for the account of petitioners, to the amount of fifty cents per stem or bunch.

That said insurance was to attach and cover all cargoes consigned to petitioners from the time when the goods and merchandise were laden on board any steamer coming from Bocas del Toro and other points, until the said goods and merchandise were discharged and safely landed at Mobile or New Orleans, according as the goods were consigned to petitioners at one or the other point, and the insurance was to so attach and cover the goods and merchandise, without notice of the consignment being given the defendant corporation, or its agents, at the time of the landing, but it sufficed if such notice was given sometime thereafter. The time being fixed by the well known custom and usages of the fruit trade at the port of New Orleans, which custom and usage was well known to the defendant corporation, and by the terms of the contract, and the course of business which had grown up thereunder between petitioners and the defendant corporation and the time being so fixed, by all the hereinbefore mentioned circumstances, was after the arrival and unloading of the vessel carrying the cargo, at the port of destination.

That it was further stipulated that upon said notice being given to the defendant corporation, it would charge petitioners and collect from them the premiums due on the value of the cargo, as shown by the given notice, and it was the custom of the said defendant corporation and its agents, to collect at the end of the month or shortly thereafter, all the insurance premiums, which had accumulated during the month.

That since the issuance of the described and mentioned policy of insurance on the 29th day of October, 1896, they had faithfully lived up to every obligation which they had assumed toward the defendant corporation.

That up to the 19th day of November, 1898, petitioners had faithfully and as promptly as was required by the course of business, which had been adopted by the defendant corporation in dealing with petitioners, reported each cargo consigned to them, and the same was

noted by the defendant corporation and the premiums collected thereon from petitioners.

That the total amount of premiums so paid by petitioners to the defendant corporation from the date said policy was written, until November, 1898, amounted to $10,761.59, and that all of the cargoes upon which these premiums were paid were reported after the safe arrival of the vessels and cargoes at the port of destination, and after all risk and hazard were at an end.

That on the 30th day of October, 1898, the steamship Phoenix left Bocas del Toro, bound for the port of New Orleans, with a cargo of bananas, rubber and gold, consigned to petitioners, and on or about the 4th day of November, 1898, the said steamship was wrecked by a hurricane, and the said vessel and cargo abandoned by the master and crew of the vessel, all of which was, with greater certainty, shown by an annexed protest made in accordance with maritime law, by the master and other officers of said steamship on the 14th day of November, 1898, at the city of Mobile, Alabama, before Henry Hanan, a duly authorized notary of said city.

That, in consequence of this disaster to the said steamship, the bananas on board thereof, consigned to petitioners, were totally lost and destroyed, and the loss so occurring was a loss within the terms of the policy described, which policy was at the time mentioned in the petition in full force and effect.

That they had duly presented to the defendant corporation their claim for the loss hereinbefore described, but it delayed acting thereon until the 3rd day of January, 1899, nealy two months after the claim had been made and presented, and then the said defendant corporation refused to pay their claim.

That the cargo of bananas so totally lost and destroyed, consisting of 9,083 bunches or stems, was well worth 45 cents per stem, or $4,087.35, but from this sum should be deducted the premiums due on the following cargoes:

Premium on cargo—steamship Tyr............$26 68
Premium on cargo—steamship Espana ........ 50 62
Premium on cargo—steamship Condor ........ 25 31
Premium on cargo—steamship Tyr ............ 29 32—$4,087 35
Premium on cargo—steamship Phoenix ........ 30 65     164 58

Leaving the net amount due petitioners................$3,922 77

That under the terms of the existing contract, this amount was due and payable on the 14th day of November, 1898, and amicable demand had been made in vain.

Defendant answered, first pleading the general issue. It admitted that it had issued in favor of the plaintiffs, its policy No. 423, which policy was that commonly known as an "open marine policy." That said policy contained, among others, the express warranty that all risks under the policy should be reported to Lucas E. Moore, agent, as soon as known to assured.

That it was not liable to plaintiffs in any sum whatever, because the plaintiffs violated the express warranty above set out, and without which the policy would not have been issued, in this;

That plaintiffs frequently failed to report risks, as stipulated, among others as follows:

"Steamship Condor, No. 2, October 7.
"Steamship Espana, No. 5, October 10.
"Steamship Tyr, No. 3, October 11.
"Steamship Espana, No. 6, October 24.
"Steainship Condor, No. 3, October 25.
"Steamship Tyr, No. 4, October 29, 1898."

That said risks were known to the plaintiffs on and before the dates hereinabove set out, but were not reported to defendant.

That said failure of plaintiffs to report said risks was a breach of the warranty, so specially stipulated, upon the good faith of which the contract was made, and an avoidance of the policy.

That all of said risks were known to the plaintiffs prior to the loss of the steamship Phoenix, complained of in the petition, and by reason of the failure of plaintiffs to report said risks at the time of the loss of said steamship, the warranty had been violated; the policy was not in force, and defendant was not liable for the loss.

The District Court rejected plaintiffs' demand, and they appealed.

The policy upon which plaintiffs declare, reads as follows:

"Whereas it hath been proposed to the Union Marine Insurance Company, Limited, by Messrs. J. B. Camors & Company...........
as well in their own name as for and in the name of all and every other person or persons to whom the subject matter of this policy does,

may or shall appertain in part or in all to make with the said company the insurance hereinafter mentioned and described.

*"Now this Policy Witnesseth:*

that in consideration of the said person. or persons effecting this policy, promising to pay to the said company the sum of various amounts as a premium at and after the rate of......as agreed........ per cent. for such insurance, the said company takes upon itself the burden of such insurance to the amount of *fifty cents per stem of bananas from Bocas del Toro; forty cents per stem of bananas from Honduras.*

"And promised and agrees with the *insured, their executors, administrators and assigns,* in all respects truly to perform and fulfill the contract contained in this policy.

"And it is hereby agreed and declared that the insurance shall be and is an insurance (lost or not lost) at and from British and Spanish Honduras and the United States of Colombia to New Orleans and Mobile.

"And it is also agreed and declared that the subject-matter of this policy as between the insured and the said company, so far as concerns the policy, shall be and is as follows: Upon bananas, cocoanuts and oranges, .....................also to cover such other risks as may be accepted and endorsed by Lucas E. Moore & Co., agents, upon the book attached to this policy. ..........in the ship or vessel called the *steamers,* including all risk of craft and boats to and from the said ship or vessel. Each craft or lighter to be deemed a separate insurance.

"And the said company promises and agrees that the insurance aforesaid shall commence from the time when the goods and merchandise shall be laden on board the said ship or vessels, craft or boat, as *above,* and continue until the said goods and merchandise be discharged and safely landed as *above."*

Written across the policy in ink are the words:

"Warranted that all risks under this policy shall be reported to *Lucas E. Moore & Co., Agents,* as soon as known to assured."

## OPINION.

This policy was attached to a book which was usually in the posses-

sion of Lucas E. Moore & Co., in which they entered from time to time the risks covered by the policy with details as, for instance:

| Date. | On what. | Vessel. | Voyage From— To— | | Sum insured. | Rate. | Premium |
|---|---|---|---|---|---|---|---|
| Sept. 23, 1898. | 8000 bunches bananas. | Tyr No. 2. | Bocas del Toro. | New Orleans. | $3600.00 | ¾ | $27.00 |

The bills for premium were made out monthly by the defendants, sent to plaintiffs and paid by them.

We find in the record a number of reports or notices of which the following is one:

*Please Insert Amount of Invoice.*

*Lucas E. Moore & Co., Agents of the Thames and Mersey Insurance Company, Limited; Union Marine Insurance Company, Limited.*

*Please Enter Open Marine Policy No. ——*

| On what. | Name of vessel. | From— | To— | Amount invoice. | Amount insured. | Rate. | Premium |
|---|---|---|---|---|---|---|---|
| 12,100 bunches bananas. | Condor No. 2. | Bocos. | N.O. | ...... | $5445.00 | ¾ | $40.84. |

Not covered if stored.

Approved.

New Orleans, November 7, 1898.

Signed.  J. B. Camors & Co.

Applicant.

No allusion is made in the policy otherwise than in the warranty clause heretofore copied. The rate of premium is not mentioned therein, it is only referred to "as agreed."

The petition does not state the rate.

· The steamer Phoenix left Bocas del Toro, bound for the port of New Orleans, with a cargo of bananas, rubber and gold, consigned to plaintiffs, and on or about the 4th of November, 1898, the ship was wrecked by a hurricane and the vessel and cargo abandoned by the master and crew.

Plaintiffs reported the loss to the defendant's agents on the 12th day of November, 1898. On the same day plaintiffs reported the steamship Espana due to unload some 11,000 bunches at 5 o'clock that evening. On the 19th of November, 1898, Lucas E. Moore & Co., stating that they would be obliged if plaintiffs would furnish them with a list of all their fruit, cargoes, and dates of arrival at New Orleans and Mobile during the last six months, plaintiffs furnished the list between May

10, 1898, and October 29, 1898, on the 19th of November, 1898. At the same time (November 19, 1898,) there were sent to defendant reports of two cargoes which had arrived on respectively the 7th and the 10th of October, 1898, being steamship Condor, No. 2, and Espana, No. 5.

These reports were dated on the day they were sent (November 19, 1898), but they were returned to plaintiffs so that they could be dated the date of their arrival, or within a few days thereafter. It is claimed by the defendants that in addition to those two cargoes, plaintiffs failed to report those arriving as follows:

Steamship Tyr, No. 3, October 11th.

Steamship Espana, No. 6, October 24th.

Steamship Condor, No. 3, October 25th.

Steamship Tyr, October 29th.

After the report of the loss of the Phoenix, all cargoes consigned to the plaintiffs, during November and December up to January 3, 1899, were reported to the defendants. They were:

Steamship Espana, No. 9, arrived November 12, reported November 15, 1898.

Steamship Joseph Oteri, No. 11, arrived November 13, 1898, reported November 15, 1898.

Steamship Espana, No. 10, arrived December 8, 1898, reported December 12, 1898.

Steamship Franklin, No. 1, arrived December 21, 1898, reported December 22, 1898.

On the 3rd of January, 1899, defendant's agents wrote to the plaintiffs saying: "Referring to your claim for total loss of bananas, per steamer Phoenix, we beg leave to say that we are in receipt of a cable from the Union Marine Insurance Company, Limited, instructing us not to pay the loss because of your omitting to declare risks under your policy during the month of October."

This suit followed.

The defence set up is not in respect to any matter connected with the cargo on the steamship Phoenix, or the loss thereof, but a claim that the general open policy has been forfeited by the failure of the plaintiffs to declare risks under that policy during the month of October, 1898, and therefore the cargo on that particular steamship was never insured.

Both sides admit that all cargoes consigned to the plaintiffs, either at New Orleans or Mobile, from certain points mentioned in the

policy, were covered or insured from the moment of the shipment, though neither the assured nor the insurer knew of the shipment.

George C. Bright, in charge of the insurance department of the business of Lucas E. Moore & Co., being upon the stand as a witness for the defendant and interrogated as to the course of business between the parties, in connection with the book and policy of insurance, testified that the course of dealing between Lucas E. Moore & Co., Agents of the Marine Insurance Company, and J. B. Camors & Co., was that they were to be held covered on all cargoes of fruit coming into the ports of New Orleans and Mobile; it was understood that they couldn't report their risks, of course, before they knew them, but as soon as they did know them they were to report them.

Their method of making these reports, it was well understood, was based upon the number of bunches discharged from the ship, and as soon as the ship was discharged and each bunch was inserted at a certain price, the entries in the book were mostly made by witnesses, some by clerks in the office; they were based upon the application which J. B. Camors & Co. sent to Lucas E. Moore & Co. from time to time. Witness had no particular means of ascertaining when the reports should come in, nevertheless he had noticed on one and possibly another occasion that Camors & Co. had not promptly made their reports according to the contract. Witness saw Mr. Victor Camors and urged upon him the seriousness of his neglect if he did not report the risks promptly; he particularly called his attention to his contract and he told witness that he fully intended to make prompt reports: He stated that on the 19th of November, 1898, suspecting that Camors & Co. had not turned in all their declarations, witness wrote them a letter and asked them to give him a memorandum of the last six months of all risks they had; they sent that memorandum and accompanying it were two declarations, one dated November 19, 1898, on the Condor, No. 2, and one dated November 19, 1898, on the Espana, No. 5.

In each case he looked up these vessels and found out that they had arrived more than a month before, and witness sent these declarations back to Camors & Co. by the boy, telling him to tell them that this was not right, and that these declarations should have been dated the day of the ship's discharge or within a few days thereof, as soon as the bananas were counted. The man who made out these declarations then redated them correctly in red ink; witness told the boy to have Mr. Camors put them down in red ink (they were at first in black ink),

to write the right dates when these declarations should have been made, and the boy had it done; the one on Condor, No. 2, being re-dated October 7th, ·and the second, Espana, No. 5, being redated October 10th.

Witness had not seen these two shipments down anywhere at all on the lists furnished to the court. The two declarations were filed in evidence. In connection with it counsel filed a declaration of Camors & Co. of October 7th, on the Espana, of the same date on Phoenix, No. 4; another of October 10th on Condor, No. 3, and another of October 18th on the Phoenix. These declarations were·introduced over plain-tiffs' objection (and under bill of exception) that defendants' proof should be confined to failure to report the five or six vessels in con-troversy.

Defendant introduced in evidence plaintiffs' notice of October 11th of the Tyr, No. 3; of October 24th of the Espana, No. 6; of October 25th of Condor, No. 3; of October 29th of Tyr, No. 4; of November 14th of the Phoenix, No. 6. These notices were not entered in the book; witness could not remember when they were received at the office; he was in the office on all these dates; it was the custom of Lucas E. Moore & Co. to enter up notices in the book within a very reasonable time; witness was in New Orleans from October 11th to about October 19th; from the 19th of October to the 8th or 9th of No-vember he was away.

In this statement as to the course of business and the time of giving notice of shipments the plaintiffs concur. The evidence shows that on the 30th of October, 1898, the steamship Phoenix left Bocas del Toro, bound for the port of New Orleans, with a cargo of fruit, and that on or about the 4th of November, 1898, she was wrecked in a hurricane and the vessel and cargo abandoned by the master and crew.

The cargo was unquestionably insured under the policy declared on if it was in existence at the time of the wreck.

The defendant contends that it was not then in existence; that the policy had been forfeited by a breach of warranty. That the breach of warranty is claimed to have· consisted in failing to report a number of risks which were known to them—this prior to the loss of the Phoenix. . The evidence shows that several cargoes of fruit, consigned to the plaintiffs and covered by defendant's policy of insurance, arrived at the port of New Orleans in the early part of October, 1898, and were

discharged and not reported then; that others arrived and were discharged in the latter part of October and were reported to defendant.

Defendant contends that the holding so long back of the earlier cargoes, followed by reports of later cargoes, was intentional and designed to escape the payment of premiums to them, and that the facts of the case would never have been known had not the loss of the Phoenix occurred.

The plaintiffs do not deny the fact that such reports were delayed and not reported until after later cargoes had been reported, but they deny that it was intentional, and assert that it was due to the prevalence of yellow fever in New Orleans at the time and to the sickness of their clerks who were charged with this particular duty; that mistakes of this kind had occurred before and been corrected, being recognized to be mistakes, and that the defendant had repeatedly collected premiums on cargoes so tardily or erroneously reported, and that the warranty clause was substantially abrogated between the parties, waived and ignored.

That the policy being an open running or floating policy, each cargo was the subject of a separate insurance; that the warranty clause applied only to each separate cargo, and that the effect of a breach of the warranty in respect to a particular cargo, extinguished the insurance on that particular shipment, but left the general policy alive as to other then existing insurance on other cargoes, and as to future shipments.

Plaintiffs further contend that notwithstanding defendant knew of the facts on which they predicate their discharge from liability, they gave no notice to them that they held the policy to have been terminated, but continued thereafter to receive, without objection, notices of later shipments and permitted plaintiffs, on the faith and strength of their belief of the continued existence of the policy, to leave these later shipments uncovered in other companies, and that by such conduct they had waived the forfeiture of the policy if it had, in fact, become vacated.

Construing the warranty clause, as both parties concur in construing it, as not bringing about a forfeiture of the policy by tardiness of reports where cargoes have arrived safely in port, and some time has been taken in ascertaining the extent of the same, the clause would be of little value to the defendants were we to hold that it applied and attached only to each separate shipment, and by its breach vacated

only the insurance upon the particular shipment, with respect to which the breach occurred.

As both parties concur in the proposition that mere knowledge by the plaintiffs of the fact that particular shipments were at sea, does not enter as a factor as affecting the question of a breach of warranty; the practical result would be to reduce the warranty clause upon the policy to the giving to the insurer, in case of the loss of a cargo, prompt notice of the loss and of claim. We do not think the scope of the clause should be so restricted and narrowed. We think it contemplated a broader protection to the insurer than this and entitled him, should he, on account of a delay in reporting or an entire omission to report a particular shipment, believe the assured was not acting in good faith, to at once avail himself of this breach of the warranty and vacate at once the whole policy.

Plaintiffs claim an abrogation or waiver of the warranty .clause as arising from the fact that upon a number of occasions where they had failed to make reports as promptly as they should, or by some inadvertence they had omitted to make reports in the regular order of shipments, the defendant had nonetheless charged and collected premiums upon the shipments. The cases referred to were all cases where the cargoes had arrived safely, and the shippers recognizing liability under the policy had tendered payment of the premium. It could scarcely be expected that the insurer would refuse to receive payment under such circumstances, but is thoroughly illogical to infer from the fact of such acceptance, a relinquishment on his part of the right to deny his own liability in case of a loss, by reason of a breach of warranty.

Warranty is inserted in the policy in the interest of the insurer; he may waive or he may insist upon it, as he elects, in any given case.

Plaintiffs claim that their failure to make reports was due to the sickness of their clerks. If there was in fact breach of warranty, that fact carried the vacating of the policy independently of the reasons therefor.

Plaintiffs contend that the retention, without objection by the defendant, of notices of shipments subsequently made by them, was a waiver of the prior breach of the policy.

If the defendant, knowing of the facts authorizing a vacation of the policy, and intending to claim said vacation, had failed to duly notify the plaintiffs to that effect, and retained, without objection, notices of

subsequent shipments, plaintiffs would have had strong ground for urging the particular contention we are now considering, if those special shipments had been lost. That, however, is not the case before the court. None of the subsequent shipments have been lost, nor has the defendant entered the same upon the policy book, or charged or received premiums upon the same, or done any affirmative act, in respect to them. The cargo, in this case, was lost and the policy vacated prior to the fact on which this alleged waiver is based.

We have said that where there has been a breach·of warranty in respect to one shipment, the insurer may avail himself of that breach to vacate the whole policy, as to all existing and future shipments; as a matter of course the particular breach so sought to be made use of, must not have been itself waived.

For the reasons assigned, the judgment appealed from is hereby affirmed.

Rehearing refused.